## Case No. 11,778.
### RICHARDSON'S CASE.
[5 Cranch, C. C. 338.] [1]

Circuit Court, District of Columbia. Nov. Term, 1837.

SLAVERY—RUNAWAYS—WARRANT.

1. A warrant of commitment of a person as a runaway is not sufficient unless it states on its face that the party has been convicted of being a runaway servant or slave. It is not sufficient to state in the warrant that the party is "charged with being a runaway."

2. Quaere, whether the old laws of Maryland respecting runaways are applicable to this part of the District of Columbia.

Upon the return of a writ of habeas corpus, issued by order of the court, it appeared that the prisoner, William Richardson, a colored man, was committed by a warrant, issued by a justice of the peace, directed to the marshal, stating that whereas, F. B., a constable, had apprehended and brought before him, Negro William Richardson, "charged with being a runaway; and whereas no proof has been adduced before me that the said William Richardson is not a runaway; you are hereby commanded to receive into your jail and custody the said William Richardson and him safe keep until he be thence delivered by due course of law."

Mr. Carlisle, for prisoner, suggested that the old statutes of Maryland were not applicable to this part of the district, nor to the present state of society. They were in general applicable to classes of servants which do not exist in this county, namely, imported white servants "by indenture, or according to the custom of the country." The only statute of Maryland, authorizing the commitment of runaway servants or slaves to the

[1] [Reported by Hon. William Cranch, Chief Judge.]

county jail, is the act of 1615 (chapter 44), entitled "An act relating to servants and slaves," which, in its preamble, says: "Whereas there have been several acts provided against servants, runaways, which have hereto proved ineffectual, in regard they do not sufficiently provide encouragement for such person or persons, inhabitants of this province, as should seize such runaways, or servants, by this act deemed runaways. Therefore, for the better discovery, seizing, and apprehending such runaways, be it enacted," &c.. "that from and after the publication hereof, no servant or servants whatsoever, within this province, whether by indenture, or according to the custom of the country, or hired for wages, shall travel, by land or water, ten miles from the house of his, her, or their master, mistress, or dame, without a note under their hands, or under the hand of his or their overseer, if there be any. under the penalty of being taken for a runaway, and to suffer such penalties as are hereafter provided against runaways." This first section, it is evident, is applicable only to servants, as distinguished from slaves. Before a person can be convicted under this section of being a runaway, it must be proved that he is a servant, either "by indenture," "or according to the custom of the country," "or hired for wages." And his master or mistress, and the residence of such master or mistress. must be known, and it must be proved that the servant was found travelling ten miles from the house of such master or mistress. If these things are not proved, the person cannot be convicted of being a runaway; and if not convicted, he cannot be committed as a runaway. The penalties provided against runaways, by the second section of the act, are only applicable to servants whose term of servitude may expire; for they are to make "satisfaction by servitude or otherwise," "not exceeding ten days' service for any one day's absence." "after the expiration of such servant's first time of servitude by indenture or otherwise." The 3d and 4th sections enact penalties against persons for entertaining or harboring such servants or slaves. The 5th section says: "For the better discovery of runaways, it is hereby further enacted," &c.. "that any person or persons whatsoever within this province, travelling out of the county where he, she, or they, shall reside or live, without a pass under the seal of the said county," "such person or persons, if apprehended, not being sufficiently known, or able to give a good account of themselves, shall be left to the discretion and judgment of such magistrate or magistrates before whom such person or persons as aforesaid shall be brought, to judge thereof; and if, before such magistrate. such person or persons, so taken up, shall be deemed and taken as a runaway or runaways, he, she, or they shall suffer such fines and penalties as are hereby provided against runaways." The offence created by

this section, is, travelling out of the county where the person resides, without a pass under the seal of the county. As there is but one county in this district, subject to the Maryland laws, it is evident that no person, in the district, subject to those laws, can possibly be found travelling out of his county. This 5th section, therefore, is clearly not applicable to this part of the district. But if it were, the magistrate before whom the supposed runaway is brought, is to judge thereof; that is, whether he is a runaway or not; and if he shall convict him of being a runaway, he must also decide who is his master, to whom the satisfaction is to be made, and the amount of the satisfaction; and having so decided and adjudged, he is then (by the 8th section of the act,) authorized to take the runaway "into custody or otherwise him, her, or them to secure and dispose of as he shall think fit, until such person or persons, so seized and apprehended, shall give good and sufficient security to answer the premises at the next court that shall first ensue in the said county; which court shall secure such person or persons, till he or they can make satisfaction to the party that so apprehend or seize such runaways or other persons, as by this act is required; except such person shall make satisfaction as aforesaid, before such court shall happen." The "premises" which he is to answer at the next court, are the two hundred pounds of tobacco, which, by the 6th section, he is to pay for his own apprehension, whether convicted or not, of being a runaway. The 6th section is as follows: "And for the better encouragement of all persons to seize and take up such runaways, it is hereby further enacted," &c., "that all and every such person and persons as aforesaid, seizing or taking up such runaways travelling without passes as aforesaid, not being able to give a sufficient account of themselves as aforesaid, shall have and receive two hundred pounds of tobacco, to be paid by the owner of such runaway servant, negro, or slave, so apprehended and taken up; and if such suspected runaway or runaways be not servants, and refuse to pay the same, he, she, or they shall make satisfaction by servitude, or otherwise, as the justices of the provincial and county courts, where such person shall be so apprehended and taken up, shall think fit." The 7th section offers a reward to the neighboring Indians, for taking up runaway servants or slaves. By the 8th section it is further enacted as follows: "And that notice may be conveniently given to the master, mistress, dame, or overseer, of runaways taken up as aforesaid, the commissioners of the counties shall forthwith cause a note of the runaway's name so seized and apprehended as aforesaid, to be set up at the next adjacent county courts, and at the provincial court and secretary's office, that all persons may view the same, and see where such their servants are, and in whose custody." It is evident that

this part of the section is not applicable to this county; as there are no adjacent county courts under the same jurisdiction and subject to the same law. Nor is there any provincial court, or secretary's office, at which the notice could be set up; nor any commissioners to set it up. It is evident that the provisions of this section are only applicable to servants, and not to slaves. All the penalties against runaways, are only applicable to servants. The courts and the magistrates can only convict servants. There are no penalties against slaves. The master alone has the power to inflict penalties and pains on his slaves for running away; and the laws give him no authority to use the public jails for confining his slaves. The 35th section, which limits the time of imprisonment of persons committed as runaways, to six months, is only applicable to white persons; and within the six months, although they may prove that they are not servants, and therefore never were runaways, yet they cannot be discharged without paying to the sheriff or jailor, ten pounds of tobacco for every day's imprisonment, and two hundred pounds of tobacco to the person who apprehended them. But the provisions of this section do not include colored persons. Color is said to be prima facie evidence of slavery. But it is not evidence of temporary servitude; and therefore does not bring the case of colored persons within the provisions of the acts respecting runaway servants. The act of 1719 (chapter 2) affords a strong inference that no person was to be committed as a runaway servant or slave, unless his master was known, and he was convicted of being the servant or slave of such known master; for it relates only to those servants and slaves whose masters or owners have had a month's notice of the commitment, if living within the province, or two months' notice if living in any of the neighboring provinces; in which case, if such master or owner do not appear within the time limited and pay, or secure to be paid, the imprisonment fees, and such other charges as have accrued or become due to any person for taking up such runaway servant or slave, the sheriff is required to give notice of the time and place of sale, by setting up notices at the church and courthouse doors of the county; and to proceed to sell to the highest bidder, and to pay himself his imprisonment fees, and such other charges, and shall be accountable to the master or owner only for the surplus. This act, therefore, does not affect the present case, further than it tends to show that no person can be convicted of being a runaway, whose master is not known or ascertained.

The only other act relating to the subject is the act of 1792, c. 72, entitled "An act to restrain the ill practices of sheriffs, and to direct their conduct respecting runaways." It says: "Whereas it is represented to this general assembly, that the sheriffs of the respective counties have neglected to advertise

runaways, to the great injury of the owners; therefore, (2) be it enacted, &c.. that it be the duty of the respective sheriffs, and they are hereby required and directed, upon any runaway being committed to their custody, to cause the same to be advertised in some public newspaper within twenty days after such commitment, and to make particular and minute description of the person, clothes, and any bodily marks, of such runaway. (3) And be it enacted, that if no person shall apply for such runaway within the space of thirty days from such commitment, then it shall be the duty of such sheriff, if residing on the western shore, to cause the said runaway to be advertised, as heretofore directed, in the Maryland Journal and Georgetown Weekly Ledger, and if residing on the eastern shore, to cause the same to be advertised in the Maryland Herald and Maryland Journal, within sixty days from such commitment, and to continue the same therein until the said runaway is released in due course of law. (4) And be it enacted, that if any sheriff shall refuse or neglect to comply with the directions of this act, he shall, for every such refusal or neglect, forfeit and pay the sum of twenty pounds current money, to the owner of such runaway." This act, so far as it requires the advertisement to be in particular papers, is not applicable to this district; and no penalty can be recovered of the sheriff unless the person committed is actually a runaway, and the owner ascertained; thereby affording another strong inference that no person can properly be committed as a runaway unless his master or owner is ascertained. The running away of a servant from his master is by the statute made a criminal offence, and, like all other criminal offences, must be strictly proved by competent evidence. And by the constitution of the United States, (Amend. art. 4,) "the right of the people to be secure in their persons," "against unreasonable seizures, shall not be violated; and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing" "the person" "to be seized." Here the prisoner has been committed under a warrant issued without any probable cause supported by oath or affirmation, and containing no charge of any offence. It only charges that the prisoner was brought before him "charged with being a runaway." It does not appear that the magistrate exercised his own judgment at all, or that he made any inquiry as to the fact of the prisoner's having run away from any master; or that he examined any person upon oath. The statute imposes upon the justice, expressly, the duty of judging whether the person apprehended is "to be deemed and taken as a runaway." It is the duty of the magistrate diligently to inquire into the facts. The presumption arising from color may be rebutted by many circumstances; and the magistrate ought to be satisfied that the person has a master and

that he has run away from him, before he deprives him of his liberty. The warrant does not state that he was thus satisfied.

Upon these grounds Mr. Carlisle contended that the prisoner ought to be discharged. But he also produced evidence which satisfied the court that the prisoner was born free in New Brunswick.

Mr. Carlisle cited Rex v. Rhodes, 4 Term R. 220, upon the English vagrant act of 17 Geo. II. c. 5, that there must be a conviction to justify the commitment; and Rex v. Cooper, 6 Term R. 509; s. p. 5 Burrows, 2684, and 6 Petersd. tit. "Conviction." 231, that a conviction must strictly conform to the statute.

MORSELL, Circuit Judge, said that he had strong doubts whether the Maryland laws respecting runaways were applicable to this district; but that, at all events, the warrant of commitment was insufficient to justify the detention of the prisoner.

CRANCH, Chief Judge, was also of opinion that the commitment was not sufficient, as it did not state any conviction by the justice, or even an opinion that the prisoner was a runaway; but a mere assertion that he was charged as a runaway; and said that the magistrate is bound to examine the case, and be satisfied by competent evidence on oath that the person is a runaway. He gave no opinion upon the question whether the Maryland laws upon this subject were applicable to this county.

THE COURT (THRUSTON, Circuit Judge, absent) ordered the prisoner to be discharged, because the warrant of commitment was insufficient, and because they were satisfied that he was not a runaway.